UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CARL BLOUNT,

        Plaintiff,

v.                              CAUSE NO. 3:24cv314 DRL-SJF

RON NEAL *et al.*,

        Defendants.

## OPINION AND ORDER

Carl Blount, an inmate at the Indiana State Prison (ISP), sued Warden Rob Neal, Unit Team Manager Pamela Bane, and Executive Assistant Mark Newkirk for violating his right to due process. He says, while placed in administrative restrictive housing between February 18, 2023 and November 18, 2023, the defendants failed to review his continued placement there meaningfully. The defendants request summary judgment because they say Mr. Blount failed to exhaust his administrative remedies. The court grants the motion.

## BACKGROUND

Mr. Blount is an inmate housed at ISP [41-7 Tr. 6]. On August 17, 2022, prison officials found a weapon in his toilet during a shakedown [*id.*]. He admitted to possessing the weapon and received a sanction of 180 days in disciplinary restrictive housing (DRH) [*id.*]. Staff reviewed Mr. Blount's status while he was in DRH on October 6, 2022 [*id.* Tr. 20-21]. When staff first assigned him to DRH and at the review, Mr. Blount didn't contest the classification [*id.* 20]. After the 180 days, on January 31, 2023, staff conducted another review [*id.*]. This review, signed by Head Unit Team Manager Pamela Bane, recommended a transfer [*id.* Tr. 20-21].

Following a classification hearing, Warden Ron Neal approved a change in Mr. Blount's classification status from DRH to administrative restrictive housing (ARH) on February 9 [41-3 at 19].[1] Both DRH and ARH are classifications in the restrictive housing unit in the prison's D-cellhouse [41-1 ¶ 5, 8; 41-4 ¶ 25, 27; 41-7 Tr. 7-9]. Mr. Blount seems to have been moved to ARH on February 18, 2023 [41-3 at 16].

The Indiana Department of Correction (IDOC) maintains an Adult Offender Classification Policy (IDOC Policy No. 01-04-101) that was in effect during the period Mr. Blount alleges his classification wasn't meaningfully reviewed [41-2; *see* 41-1 ¶ 31]. Executive Assistant Mark Newkirk and IDOC Grievance Specialist Joshua Wallen testified that this policy is available to all inmates at ISP, as it is provided in a handbook each inmate receives upon arrival, and it was available to Mr. Blount while housed at ISP too [43-1 ¶ 31, 34; 43-4 ¶ 6, 7].

The policy provides that an "Offender receives a classification decision from the Supervisor of Classification" and has "the right to appeal a classification or assignment decision" using ISP's classification appeal process [41-2 at 19; 41-1 ¶ 13]. The offender has 10 days after a classification decision to submit a written appeal to the warden using State Form 9260, appending relevant documents as deemed necessary [41-2 at 19]. The warden is the final administrative review for classification decisions and appeals [*id.* at 20; 41-1 ¶ 17]. Accordingly, once an inmate has submitted the requisite State Form 9260 and receives a response, administrative remedies have been exhausted [41-1 ¶ 17]. There is no other way to exhaust the classification appeal process [*id.* ¶ 18].

---

[1] Mr. Blount testified that ARH isn't in any way "better" than DRH—the two are simply different restrictive classifications [41-7 Tr. 25, 61-62]. Mark Newkirk, executive assistant to Warden Neal, detailed that from a classification perspective, the former is a step down from the latter [41-1 ¶ 7]. This difference in perspective isn't material to this motion's outcome.

On February 23, 2023, Mr. Blount filed a classification appeal, claiming his reclassification from DRH to ARH failed to comply with the requirements of due process [41-3 at 17]. He later testified he wanted to be moved from DRH to general population [41-7 Tr. 60].[2] The appeal was denied by Mr. Newkirk on March 23, 2023 because the reclassification was "properly documented" and "done in accordance" with IDOC policies [41-3 at 18]. The denial letter also informed Mr. Blount that moving forward, he would be "reviewed periodically to determine [his] status" [*id.*]. Mr. Blount testified that this appeal was specifically regarding the prison's decision to change his classification status from DRH to ARH [41-7 Tr. 55-56].

Between February 17 and November 15, 2023, ISP officials performed 15 reviews of Mr. Blount's classification and whether he should remain in restrictive housing [41-3 at 1-16; 43-7 Tr. 18]. Unit Team Manager Bane signed the reviews dated March 25 and April 8 [41-3 at 8, 11]. Mr. Blount testified that caseworkers didn't conduct the reviews; they merely signed off on them [41-7 Tr. 18]. At the bottom of each review form, a section informs an inmate that "Intra-Facility placement in Facility Restrictive Housing or Protective Custody Unit may be appealed by submitting a Classification Appeal, State Form 9260, within ten (10) working days of the review to the facility Warden" [*see* 41-3 at 1-16]. The review forms contain a spot for the inmate to sign. Mr. Blount testified the purpose of that is to show that the inmate saw the form [43-7 Tr. 17]. On several instances, the inmate signature line on the form indicated Mr. Blount refused to sign [41-3 at 2, 3, 6-7, 9, 12-14, 16]. He testified he would refuse to sign if he was asleep and didn't want to sign, because he didn't understand why he was still placed in D-cellhouse, or simply because he had the option whether to sign [41-7 Tr. 23-24, 49-50]. He also testified it was possible he didn't see some of them [*id.* Tr. 44, 49]. During his deposition, Mr.

---

[2] Mr. Blount properly appealed using State Form 9260 [41-3 at 17; *see* 41-1 ¶ 24].

3

Blount testified that, though he didn't read the portion of the review form discussing an inmate's ability to file a classification appeal, he understood that if he wanted to appeal his classification, he had to fill out a State Form 9260 within 10 days of the review [*Id.* Tr. 19-20]. A counselor also told him if he didn't like a decision keeping him in D-cellhouse, he could file a classification appeal [*id.* Tr. 52-53]. Mr. Blount admitted that he never filed a classification appeal of the reviews conducted between February 17 and November 15, 2023 [*id.* Tr. 53].

On June 20, 2023, Mr. Blount submitted a grievance regarding his continued placement in disciplinary segregation [41-6 at 3]. The grievance said his time in DRH ended on February 17, 2023, and "a procedure that complies with the requirements of Due Process was not held for [him] to be placed into Administrative Restrictive Housing" [*id.*]. Grievance Specialist Wallen returned the grievance on July 20, 2023; and, though his affidavit says he returned the grievance because Mr. Blount's concern was a classification appeal issue [41-4 ¶ 32], the return of grievance shows it was denied because Mr. Blount submitted it outside the allotted 10-day timeframe [43-6 at 2].[3] An October 2, 2023 review recommended releasing Mr. Blount from ARH [41-3 at 2], and, on November 9, 2023, Mr. Blout was so released [41-7 Tr. 68].

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving

---

[3] From the defendants' evidence, it appears Mr. Blount filed another grievance on October 23, 2023 stating again a procedure complying with due process wasn't held before he was placed in ARH [41-6 at 6]. This grievance was returned by Mr. Newkirk on December 13, 2023 because the issue was a matter for a classification appeal [*id.* 4-5].

party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006)). The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). The particular rules an inmate must properly exhaust are defined not by the PLRA, but by the specific prison's grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (inmates must file grievances "in the place, and at the time, the prison's administrative rules require."). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by

5

§ 1997e(a) from litigating." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Id.* at 1023. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Though an inmate must exhaust available remedies, he "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An "available" remedy is both "capable of use for the accomplishment of a purpose" and "is accessible or may be obtained." *Id.* The defendant bears the burden of proving that an administrative remedy was available. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

The defendants argue Mr. Blount failed to exhaust his administrative remedies regarding his continued placement in restrictive housing between February 18 and November 18, 2023 because he never appealed any of the recommendations to keep him in restrictive housing, as required by IDOC policy. Mr. Blount raises two arguments in response, though neither overcome the undisputed evidence showing that he failed to exhaust his administrative remedies.

First, Mr. Blount argues even if the reviews were appealable and the process was available to him, he wasn't required to appeal the same issue again after his February 2023 appeal. Though "prisoners need not file multiple, successive grievances raising the same issue…if the objectionable condition is continuing," *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013), the undisputed evidence establishes the claim in this lawsuit differs from his appeal concerning the initial reclassification from DRH to ARH.

6

Mr. Blount's February 23, 2023 classification appeal complained about the process (or lack thereof) used to place him into ARH—that is, to move him from DRH to ARH [41-3 at 17]. Here, Mr. Blount alleges that, between February 18, 2023 and November 18, 2023, once he was already in ARH, the defendants kept him there without meaningful periodic review of whether continued placement was warranted [1 ¶ 15-16]. One differs entirely from the other. He also testified that his February 2023 appeal concerned his actual transfer from DRH to ARH [41-7 Tr. 55-56]. He thus failed to exhaust his administrative remedy by failing to present this claim of meaningful periodic review to jail officials. *See Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021) (affirming summary judgment because plaintiff "presented none of [the complaint's] allegations to the jail through the grievance process, and federal courts lack discretion to consider a claim that has not traveled the required administrative path"); *Schillinger v. Kiley*, 954 F.3d 990, 996 (7th Cir. 2020) (affirming summary judgment when offender's jail complaint raised a different issue than his lawsuit—the "grievance raised [] entirely different problems" and "did not give the prison notice of the claim at issue here").

In addition to substance, timing underscores the difference. Mr. Blount filed the February 23, 2023 classification appeal within days of arriving in ARH. The claim he asserts in this lawsuit—lack of meaningful review between February 18 and November 18, 2023—depends on what happened or failed to happen over the extended period he was kept in ARH, not merely within the initial five days. Even if the February appeal put prison officials on notice he disputed his initial reclassification, it fell short of alerting them of a separate problem, indeed an entirely prospective one, of his continued placement without periodic meaningful review. Indeed, a jail official would have needed to be prescient, and that expects too much.

Because exhaustion of one issue doesn't cover another one, *see Bowers*, 1 F.4th at 518, Mr. Blount didn't exhaust his administrative remedies regarding his continued placement in ARH.[4]

Second, Mr. Blount argues that any further administrative review process was unavailable to him. According to him, the classification policy says inmates could appeal only classification decisions made by the supervisor of classifications.

Whether Mr. Blount understood that a review was just as much an appealable decision by policy (given that someone other than the supervisor of classifications signed the forms), it is undisputed that each of the 15 reviews Mr. Blount received while in ARH contained a notice at the bottom of the form telling him "Intra-Facility placement in Facility Restrictive Housing or Protective Custody Unit may be appealed by submitting a Classification Appeal, State Form 9260, within ten (10) working days of the review to the facility Warden" [41-3 at 1-16]. Mr. Blount signed seven of these reviews [*id.* 1, 4, 5, 8, 10, 11, 15] and otherwise testified that counselors told him if he didn't like a decision to keep him in restrictive housing, he could file a classification appeal [41-7 Tr. 52-53]. Indeed, on March 14, 2023, Mr. Blount signed a seven-day review form regarding a review conducted on March 3, 2023, so he knew early [*id.* Tr. 43; 41-3 at 15].

In *Crouch v. Brown*, 27 F.4th 1315 (7th Cir. 2022), the court of appeals addressed a similar set of facts. The inmate, also incarcerated at IDOC, challenged his roughly four-year solitary confinement placement from February 2016 to December 2019, arguing it wasn't meaningfully

---

[4] In an affidavit, Mr. Blount asserts he filed a second classification appeal in July 2023 regarding his continued placement in ARH to which he never received a response [46-1 ¶ 12-14]. The prison asserts no record of it exists [*see* 41-1 ¶ 29]. This doesn't change the calculus. This affidavit contradicts his deposition testimony both that he never filed a classification appeal of the reviews conducted between February 17 and November 15, 2023 [41-7 Tr. 53] and that the July 2023 appeal was regarding his reclassification from DRH to ARH [*id.* Tr. 59]. "Parties cannot thwart the purposes of Rule 56 by creating sham issues of fact with affidavits that contradict their prior depositions," else "the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996) (citations and quotations omitted); *see James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) ("the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony."). The court won't consider the affidavit's new contradictory assertion.

reviewed. *Id.* at 1317. Over that period, he received several 30-day reviews. *Id.* at 1318. Before February 2019, the review form didn't reference the appeals process; then, the IDOC added language explaining that "Placement on Department-Wide Administrative Status Housing may be appealed by submitting a Classification Appeal (SF 9260) within ten working days of admission to a Department Wide Restrictive Status Housing Unit or any subsequent Classification action (i.e. 30 Day or 90 Day reviews)." *Id.* at 1319. The plaintiff didn't appeal any of these reviews, either before or after the new language. *Id.* The court held that he could have appealed any of the twenty 30-day reviews he received, including the six that contained the added language explaining how inmates could appeal the reviews. It was of no consequence that the IDOC policy stated inmates could appeal classification "decisions," but failed to mention "reviews" or "recommendations" as part of the process, for there was "no conflict between the Classification Policy and the appellate language added to the 30-day reviews." *Id.* at 1322.

Though the language on Mr. Blount's review forms wasn't as explicit as that added to the forms in *Crouch*, Mr. Blount's review forms still explained the review "may be appealed by submitting a Classification Appeal, State Form 9260, within ten (10) working days of *the review*" [41-3 at 1-16] (emphasis added). Merely that the policy references decisions (not reviews) by the supervisor of classification (not other officials) doesn't render administrative review unavailable. The review forms educated Mr. Blount on the procedure by which to appeal a review and he testified he understood the procedure [41-7 Tr. 19, 52]. *See Crouch*, 27 F.4th at 1322 ("rules for administrative remedies may include both written policies and informal procedures."); *see also Jenkins v. Brown*, 2023 U.S. Dist. LEXIS 25456, 14-15 (S.D. Ind. Feb. 14, 2023) (Hanlon, J.) (review forms "explicitly" notified plaintiff of ability to appeal classification review); *cf. Toney v. Brown*, 2022 U.S. Dist. LEXIS 198408, 13 (S.D. Ind. Oct. 31, 2022) (Hanlon, J.) (citing *Crouch* to

distinguish 30-day review that contained no language about appellate rights, only a note that inmates may ask questions about the report, and finding that this failed to establish plaintiff knew or should have known the reviews were appealable).

Though the court views the appeal option as demonstrably clear, pragmatically Mr. Blount should have appealed the classification decision or periodic reviews in the manner that he complains in this suit. Because he never made any attempt to appeal the classification reviews, he likewise has not shown the remedy really proved to be unavailable to him. *See Ross*, 578 U.S. at 644 ("when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion"); *Dole*, 438 F.3d at 809 (7th Cir. 2006) (exhaustion is necessary even "if the prisoner believes that exhaustion is futile") Because the appeal process (combined with the language on the classification decisions and Mr. Blount's testimony he was told by counselors of what the process was) provided Mr. Blount a remedy, he needed to exhaust it before filing this suit.

## CONCLUSION

Accordingly, finding the defendants met their burden to show Mr. Blount failed to exhaust available administrative remedies before filing this lawsuit, the court GRANTS their summary judgment motion [41] and DIRECTS the clerk to enter judgment for Ron Neal, Pamela Bane, and Mark Newkirk. This order terminates the case.

SO ORDERED.

February 20, 2026                               *s/ Damon R. Leichty*
                                                Judge, United States District Court